IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL DESUNO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 20 C 0848 |
| v. | ) | |
| | ) | Judge John Z. Lee |
| ACCURATE GROUP, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Defendant Accurate Group, LLC ("Accurate") fired Plaintiff Michael DeSuno in January 2019, because, in its view, DeSuno told a subordinate to lie to management. DeSuno claims that the real reason was his age and has brought suit under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 626 *et. seq.* Accurate has filed a motion for summary judgment. For the following reasons, Accurate's motion is granted.

## I. Background[1]

Accurate is a real estate services company. Def.'s Statement Undisputed Material Facts ("DSOF") ¶ 5, ECF No. 37. Accurate hired DeSuno as a "Staff/Contract Appraiser Recruiter" in September 2017, when he was fifty-eight years old. *Id.* ¶¶ 12, 16. DeSuno's work consisted of recruiting contract and staff appraisers and managing full-time appraisers. *Id.* ¶ 13. His managerial duties included approving his appraisers' requests for time off. *See id.* ¶ 19; DSOF Ex. J,

---

[1] The following facts are undisputed or deemed admitted, unless otherwise noted.

Michael DeSuno and Tammy D'Amore Email Correspondence ("11/16/18 Emails"),
ECF No. 37-10.

About a year after he was hired, one of the staff appraisers whom DeSuno
supervised, Tammy D'Amore, asked DeSuno whether she could take time off in order
to take her mother to various medical appointments. *See* DSOF ¶ 18; 11/16/18
Emails. D'Amore's brother had recently died, and because she had used only half of
the allotted three days of bereavement leave for his funeral, she asked DeSuno if she
could use her remaining bereavement leave for this purpose. *See* DSOF ¶ 18; *see also*
DSOF Ex. C, Accurate Employee Handbook at 35–36, ECF No. 37-3 ("Absence due to
a death in the immediate family will be paid to full-time employees for up to three
business days."). DeSuno replied, "I would, call it a memorial for your brother. Just
send another email with Helen [Merino, who was Accurate's office manager] on it so
I may approve the time." 11/16/18 Emails.

Acting on DeSuno's advice, D'Amore sent an email to DeSuno and Merino with
the subject line "Death Memorial." She wrote, "I'll need Wednesday off for a memorial
for my brother (bereavement)." DSOF ¶ 20; *see* DSOF Ex. K, 11/19/18 Email from
D'Amore to Merino, ECF No. 37-11. According to D'Amore, Merino told her the next
day that she could not use bereavement leave for her mother's medical appointments.
*See* DSOF ¶¶ 20–21. Indeed, Accurate's bereavement policy states that "funeral leave
pay will only be made to employees for actual time spent away from work for the
funeral or its arrangements." Accurate Employee Handbook at 36.

2

Sometime in December, Accurate discovered the emails between DeSuno and D'Amore. DSOF ¶ 26.[2] According to Accurate, it considered DeSuno's conduct to have violated company policy, which prohibits "[f]alsification of . . . employee records" and "[d]ishonesty." Accurate Employee Handbook at 41–42; *see* DSOF Ex. N, Employee Incident and Discipline Documentation—Michael DeSuno ("DeSuno Discipline Report"), ECF No. 37-14.

Accurate's human resources ("HR") manager, Nancy Suhoza, investigated the incident by reviewing the emails and interviewing DeSuno and D'Amore. *See* Pl.'s Statement Additional Material Facts ("PSOAF") Ex. C, Suhoza Dep. at 26:13–29:6, ECF No. 42-4. After completing the investigation, Suhoza spoke to Scott Waxman, DeSuno's direct supervisor, and Thomas Lammert, Accurate's general counsel, about her findings. *See id.* at 29:7–12; PSOAF ¶ 16; PSOAF Ex. A, Waxman Dep. at 6:21–7:2, ECF No. 42-2. Waxman then made the final decision to terminate DeSuno. *See* PSOAF ¶ 2. As Waxman put it, DeSuno's behavior "was so serious that not

---

[2]     DeSuno argues that this statement is inadmissible, because Accurate supports it by citing only to its answers to DeSuno's second interrogatory, *see* DSOF Ex. M, Def. Accurate's Resp. Pl.'s Interrogs. No. 2 (Def.'s Resp. Pl.'s Interrogs.")", ECF No. 37-13. DeSuno argues that this is improper because Accurate's interrogatory responses are inadmissible hearsay. This is correct to a point. Accurate's responses are hearsay, but "a district court may consider answers to interrogatories when reviewing a motion for summary judgment so long as the content of those interrogatories would be admissible at trial." *Hardrick v. City of Bolingbrook*, 522 F.3d 758, 761 (7th Cir. 2008). The relevant part of Accurate's response states that "[o]n or about December 11, 2018, Accurate Group discovered Plaintiff's misconduct as a result of an internal review of his company email." Def.'s Resp. Pl.'s Interrogs. No. 2. At trial, Accurate would be able to call witnesses to testify about its discovery of the relevant emails. *See Hardrick*, 522 F.3d at 761 (rejecting argument that plaintiff's responses to interrogatories were inadmissible because plaintiff would be able to testify at trial about their contents). Accordingly, DeSuno's objection is overruled.

terminating [him] raised regulator fiduciary issues . . . with [Accurate's] financial clients." *Id.* ¶ 15 (quoting Waxman Dep. at 86:12–16).

D'Amore, on the other hand, was not fired. *See id.* ¶ 31. Instead, she was given a written warning. *Id.*; *see* DSOF Ex. O, Employee Incident and Discipline Documentation—Tammy D'Amore ("D'Amore Discipline Report"), ECF No. 37-15. According to Accurate, D'Amore received less severe punishment than DeSuno because she was not a supervisory employee. *See* Waxman Dep. at 39:12–13; 94:5–8.

On January 18, 2019, Accurate notified DeSuno that he was terminated effective immediately for "instruct[ing] [D'Amore] to lie about her bereavement time" and "purposely falsif[ying] time records by requesting paid bereavement leave for [D'Amore's mother's] doctor's appointment." DSOF ¶ 29 (quoting DeSuno Discipline Report). On the date of his termination, DeSuno was fifty-nine years old. *Id.* ¶ 30.

After DeSuno's termination, Accurate left his position vacant and shifted most of his managerial responsibilities to Edwin Aguirre, who was then twenty-nine years old. *See id.* ¶ 40; PSOAF ¶¶ 29–30; PSOAF Ex. E, Email from Kris Schultz to Staff Appraisers, ECF No. 42-6.

Believing that Accurate terminated him because of his age, DeSuno filed a charge of discrimination with the Equal Employment Opportunity Commission. The Commission sent him a right-to-sue letter, and he filed this lawsuit, claiming that Accurate violated the ADEA. The parties conducted discovery, and Accurate filed the instant motion seeking summary judgment in its favor.

## II.    Legal Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The evidence considered for summary judgment "must be admissible if offered at trial, except that affidavits, depositions, and other written forms of testimony can substitute for live testimony." *Malin v. Hospira, Inc.*, 762 F.3d 552, 554–55 (7th Cir. 2014). In reviewing a motion for summary judgment, the Court gives the nonmoving party "the benefit of conflicts in the evidence and reasonable inferences that could be drawn from it." *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 794 (7th Cir. 2013).

The moving party has the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The nonmoving party must then "come forward with specific facts showing that there is a genuine issue for trial." *LaRiviere v. Bd. of Trs. of S. Ill. Univ.*, 926 F.3d 356, 359 (7th Cir. 2019) (quoting *Spierer v. Rossman*, 798 F.3d 502, 507 (7th Cir. 2015)).

To satisfy that ultimate burden, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and instead must "establish some genuine issue for trial such that a reasonable jury could return a verdict in her favor," *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772–73 (7th Cir. 2012); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("[S]ummary judgment will not lie . . . if the evidence is such that a reasonable jury

5

could return a verdict for the nonmoving party.").

### III.  Analysis

An ADEA claim requires the plaintiff to show that "but for his age, the adverse action would not have occurred." *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 719 (7th Cir. 2018) (quoting *Martino v. MCI Commc'ns Serv., Inc.*, 574 F.3d 447, 455 (7th Cir. 2009)). Both parties structure their arguments around the familiar *McDonnell Douglas* burden-shifting framework, 411 U.S. 792, 802–03 (1973), which also applies in ADEA cases.[3] *See Skiba*, 884 F.3d at 719.

Under that framework, "the plaintiff has the initial burden of producing evidence showing that "(1) she is a member of a protected class, (2) she was meeting the defendant's legitimate expectations, (3) she suffered an adverse employment action, and (4) similarly situated employees who were not members of her protected class were treated more favorably." *Simpson v. Franciscan All., Inc.*, 827 F.3d 656, 661 (7th Cir. 2016).

"If the plaintiff meets each element of her prima facie case, 'the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason'" for the action. *Skiba*, 884 F.3d at 719 (quoting *Carson v. Lake Cnty.*, 865 F.3d 526, 533 (7th Cir. 2017)). And once the defendant does so, "the burden shifts back to the plaintiff to submit evidence that the employer's explanation is pretextual." *Id.* (quoting *Simpson*, 827 F.3d at 661).

---

[3]  Courts frequently borrow from Title VII case law when evaluating ADEA claims. *See, e.g.*, *Levin v. Madigan*, 697 F. Supp. 2d 958, 973 (N.D. Ill. 2010). To the extent that the law is not unique to the ADEA, the Court will do the same here.

Finally, even though the parties employ the *McDonnell Douglas* framework, the bottom-line inquiry is whether, taking all of the plaintiff's evidence as a whole, a reasonable jury could find that Accurate discriminated against DeSuno on account of his age. *See Ortiz v. Werner Enters.*, 834 F.3d 760, 765 (7th Cir. 2016).

Here, the core of the dispute is whether Accurate terminated DeSuno because he told D'Amore to lie, or whether the incident was a pretext for terminating DeSuno because of his age. Because "the issue of satisfactory job performance lies at the heart of the dispute and must be analyzed in detail at multiple stages of the *McDonnell Douglas* test," the Court will turn to the question of pretext so that it "run[s] through that analysis only once." *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 573–74 (7th Cir. 2021) (quoting *Simmons v. Chi. Bd. of Educ.*, 289 F.3d 488, 492 (7th Cir. 2002)); *see also Barnes v. Bd. of Trs. of Univ. of Ill.*, 946 F.3d 384, 389 (7th Cir. 2020) (holding that, when an employer offers a legitimate, nondiscriminatory reason for the adverse employment action, courts can skip directly to the pretext inquiry and analyze all evidence together).

Accurate argues that it had a legitimate, nondiscriminatory reason to fire DeSuno—his dishonesty was a dealbreaker for the company. For his part, DeSuno contends that he honestly believed that telling D'Amore to call her mother's medical appointments "a memorial" did not violate Accurate's bereavement policy. But whether DeSuno was *actually* dishonest is not the question, because "the proper inquiry mandates looking at [DeSuno's] job performance through the eyes of [his] supervisors at the time," *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 689 (7th Cir. 2008);

7

*see Khungar*, 985 F.3d at 574. Moreover, "[p]retext involves more than just faulty reasoning or mistaken judgment on the part of the employer; it is lie, specifically a phony reason for some action." *Argyropoulos v. City of Alton*, 539 F.3d 724, 736 (7th Cir. 2008) (cleaned up). Thus, DeSuno must "come forward with specific facts" showing that Accurate did not actually believe that DeSuno had instructed D'Amore to lie. *LaRiviere*, 926 F.3d at 359 (quoting *Spierer*, 798 F.3d at 507). Resolving all factual disputes in DeSuno's favor and giving him the benefit of all reasonable factual inferences, the Court concludes that no reasonable jury would find that Accurate's reason for firing DeSuno was pretextual.

## A.     The Investigation

DeSuno first challenges Accurate's investigation, calling it a "sham" concocted to disguise Accurate's discriminatory motivations. Pl.'s Mem. Law Opp'n Def.'s Mot. Summ. J. ("Pl.'s Mem.") at 6, ECF No. 40. DeSuno makes much of Accurate's failure to produce the investigation file, and even argues that its failure to do so is grounds for an adverse inference. But "an employer's destruction of or inability to produce a document, standing alone, does not warrant" a spoliation inference. *Norman-Nunnery v. Madison Area Tech. Coll.*, 625 F.3d 422, 429 (7th Cir. 2010) (quoting *Park v. City of Chi.*, 297 F.3d 606, 615 (7th Cir. 2002)).

To this, DeSuno argues that the fact that Accurate has not given a specific reason why it did not produce the files entitles him to a such an inference. But the burden is not on Accurate to give an innocent reason for not retaining the file. Rather, DeSuno "must demonstrate that [Accurate] intentionally destroyed the documents in

bad faith." *Id.* DeSuno has not offered any facts to support his theory that Accurate wrongfully destroyed or withheld the documents, so an adverse inference is not warranted.[4] *See id.*; *Everett v. Cook Cnty.*, 655 F.3d 723, 727 (7th Cir. 2011) (holding that even where relevant documents were "consciously" destroyed, an adverse inference was inappropriate because the plaintiff did not "specifically point[] . . . to some evidence of bad faith." (first alteration omitted)).

In any event, the file's probative value is minimized by the undisputed fact that Waxman did not rely on the file in deciding to terminate DeSuno. Waxman decided to terminate DeSuno after consulting verbally with the company's legal counsel and Suhoza. DSOF ¶ 28; PSOAF ¶¶ 5, 7. Furthermore, even assuming that the investigation file contained exculpatory information, Waxman's failure to consult the file before firing DeSuno, standing alone, is not evidence of discrimination—at most, it is an error in business judgment, which does not support a finding of pretext. *See Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 570 (7th Cir. 2017) ("[The Court] is not a super personnel department that second-guesses employers' business judgments."); *Lauth v. Covance, Inc.*, 863 F.3d 708, 717 (7th Cir. 2017).

It is true that an investigation plagued with "flagrant inaccuracies and inconsistencies" can be evidence of discrimination. *Vega v. Chi. Park Dist.*, 954 F.3d 996, 1005 (7th Cir. 2020) (quoting *Harden v. Marion Cnty. Sheriff's Dep't*, 799 F.3d

---

[4]     In support of his spoliation argument, DeSuno relies on *In re Text Messaging Antitrust Litigation*, which held that "bad faith may be proved inferentially and with circumstantial evidence." 46 F. Supp. 3d 788, 798 (N.D. Ill. 2014), *aff'd*, 782 F.3d 867 (7th Cir. 2015). But in that case, the court went on to hold that the mere fact that the defendants had not disclosed the missing information was insufficient to support a finding of bad faith. *Id.* at 799.

857, 866 (7th Cir. 2015)). *Vega* is one example. There, the plaintiff, a park supervisor, alleged that the Chicago Park District had fired her based on national origin, even though it claimed that she was fired for falsifying her timesheets. *Id.* at 1002. The *Vega* court held that plaintiff had raised a reasonable inference of pretext by establishing "numerous material errors" in the District's investigation into her falsification of timesheets. Among them, the District's investigators had surveilled the wrong vehicle on multiple days, and the plaintiff actually was at work on a number of occasions when she was marked as being absent. *Id.* at 1005.

In contrast to Vega, DeSuno has not pointed to any similar errors regarding Accurate's investigation into the incident. Nor has he offered his version of what Suhoza asked him, despite Suhoza's uncontroverted testimony that she interviewed DeSuno as part of the investigation. *See* Suhoza Dep. at 27:7–10. Given this, DeSuno's suggestion of wrongdoing or misconduct is based on sheer conjecture that does not create a fact question as to the contents of the file or how the investigation proceeded. *See Weaver v. Champion Petfoods USA, Inc.*, 3 F.4th 927, 936 (7th Cir. 2021) (speculation or conjecture does not create an issue of fact).

## B. Progressive Discipline Policy

Next, DeSuno argues that Accurate "ignored" and "bypassed" its "progressive discipline policy" when it terminated him. "[A]n employer's failure to follow its own internal employment procedures can constitute evidence of pretext." *Rudin v. Lincoln Land Cmty. Coll.*, 420 F.3d 712, 726 (7th Cir. 2005). But that is not what happened here.

10

Accurate's policy states that "Accurate Group need not resort to progressive discipline, [and] may take whatever action it deems necessary to address the issues at hand." Def.'s Resp. Pl.'s Statement Additional Material Facts ("Def.'s Resp. PSOAF") ¶ 17, ECF No. 45 (quoting PSOAF Ex. G, Progressive Discipline Policy, ECF No. 42-8). According to Accurate, it decided to terminate DeSuno, rather than employing progressive discipline, because his alleged dishonesty raised "regulator fiduciary issues . . . with [its] financial clients." PSOAF ¶ 15 (quoting Waxman Dep. at 86:13–16). DeSuno has not pointed to any evidence that would call the sincerity of this rationale into question. Instead, he argues that Waxman "admitted" in his deposition that DeSuno's dishonesty "did not actually disqualify him from performing his duties." Pl.'s Mem. at 9. But in context, Waxman's "admission" simply referred to the fact that DeSuno was allowed to continue working while the incident with D'Amore was being investigated. *See* Waxman Dep. at 42:17–43:5 (the incident "didn't disqualify him while the decision [to fire him] was being made. So the process was the process. It had to work its way through HR and legal."). That Accurate did not fire DeSuno until it completed an investigation is hardly surprising, much less grounds for an inference of discrimination.

DeSuno also argues that he was treated more harshly than D'Amore (who was only given a written warning, *see* D'Amore Incident Report), even though they both acted dishonestly. This argument is baseless—D'Amore was DeSuno's subordinate and merely followed his directions. *See id.*[5] But even assuming the two were equally

---

[5]    Accurate initially considered firing D'Amore, but decided against it because she was not in a supervisory position. *See* Waxman Dep. at 39:11–13; 94:6–8.

culpable (and that Accurate believed they were), DeSuno has not produced any evidence that D'Amore is substantially younger than he, which would support DeSuno's age discrimination claim.[6]  Accordingly, even if DeSuno had been treated more harshly than D'Amore, there are no facts in the record from which a reasonable jury could conclude that DeSuno's age is what caused his termination.  *See Chatman v. Bd. of Educ. of City of Chi.*, 5 F.4th 738, 747 (7th Cir. 2021) ("[A] showing of pretext alone is not enough; the plaintiff must also show that the explanations are a pretext *for the prohibited animus*." (emphasis added) (quoting *Hitchcock v. Angel Corps, Inc.*, 718 F.3d 733, 740 (7th Cir. 2013))).

## C.  Responsibilities Absorbed by Younger Worker

In lieu of identifying a younger employee who was treated more favorably in comparable circumstances, DeSuno contends that Accurate conducted a mini-reduction in force ("mini-RIF") that shifted the lion's share of his job duties to Aguirre, a much younger employee.  *See* PSOAF ¶¶ 29–30.

A mini-RIF can substitute for the similarly-situated-comparator requirement of a *prima facie* case, and show pretext as well, if instead of another worker being hired in her place, a plaintiff's job duties are absorbed by younger workers.  *See Filar v. Bd. of Educ. of City of Chi.*, 526 F.3d 1054, 1060–61 (7th Cir. 2008).  Accurate contends that the mini-RIF theory is inapplicable here, because DeSuno was fired for cause.  There is some case law on Accurate's side.  *See, e.g., Vonckx v. Allstate Ins.*

---

[6]    Indeed, in response to a question about how old he thought D'Amore was, DeSuno stated in his deposition that "all appraisers are old."  DSOF Ex. E, DeSuno Dep. at 40:22–24, ECF No. 37-5.

*Co.*, No. 02 C 8474, 2004 WL 1427105, at *10 (N.D. Ill. June 23, 2004) (distinguishing RIF cases from cases of termination for misconduct). But even assuming that DeSuno's termination qualifies as a mini-RIF, this does not help him.

The mere fact that Aguirre is younger than DeSuno and assumed many of DeSuno's responsibilities is not enough for a reasonable jury to infer discrimination. *See Merillat v. Metal Spinners, Inc.*, 470 F.3d 685, 692–93 (7th Cir. 2006) (affirming summary judgment for employer because plaintiff failed to establish pretext, even though most of her duties were absorbed by a younger employee); *Monaco v. Fuddruckers, Inc.*, 1 F.3d 658, 661 (7th Cir. 1993) (same). There is no evidence in the record that Accurate knew that Aguirre would take over DeSuno's duties at the time they fired him. Nor is there any evidence that Accurate trumped up the charge of dishonesty in an effort to fire DeSuno so that Aguirre could step in.

## D.    Totality of the Evidence

The Court now considers all of the evidence as a whole, and "ask[s] whether the totality of the evidence shows discrimination, eschewing any framework or formula." *Igasaki v. Ill. Dep't of Fin. and Pro. Regul.*, 988 F.3d 948, 958 (7th Cir. 2021) (citing *Ortiz*, 834 F.3d at 765). It does not. Even when all factual disputes are resolved in DeSuno's favor, the Court concludes that no reasonable jury could find that Accurate terminated DeSuno because of his age.

DeSuno contends that "[Accurate] decided to reduce and/or restructure its personnel, selected a substantially younger employee over [DeSuno] for retention, and then lied about the reasons for its decision to conceal a discriminatory motive."

Pl.'s Mem. at 14. But he offers little to substantiate this theory. DeSuno's evidence consists only of the fact that he was terminated, rather than subjected to progressive discipline, and the fact that Accurate shifted his duties to Aguirre, who was much younger. Those may be the building blocks of a *prima facie* case, but Accurate has offered a nondiscriminatory reason for its decision, and DeSuno has pointed to not even a scintilla of evidence that this justification was a lie. Without such evidence, there is no issue of fact for the jury to decide. *See Chatman*, 5 F.4th at 747; *Weaver*, 3 F.4th at 936; *Igasaki*, 988 F.3d at 962 ("[A] speculative inference does not an employment discrimination case make.").

An inference of discrimination is even less plausible when DeSuno's termination is viewed in context. DeSuno was hired when he was fifty-eight and was fired only one-and-a-half years later, when he was fifty-nine. DSOF ¶¶ 12, 16. The fact that he was within the ADEA's protected class when he was hired and was fired less than two years later severely undercuts a finding of discrimination. *See Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 399 (7th Cir. 1997) ("It is highly doubtful that a person who hires an employee in the protected age group . . . would fire that same employee less than two years after [hiring them] . . . as a result of a 'sudden aversion to older people.'" (quoting *Lowe v. J.B. Hunt Transp., Inc.*, 963 F.2d 173, 175 (8th Cir. 1992))), *overruled on other grounds by Ortiz*, 834 F.3d 760.[7] What

---

[7] Accurate notes that Waxman, who made the final decision to fire DeSuno, PSOAF ¶ 2, also was involved in the decision to hire him. DSOF ¶ 17. Accurate claims that this fact creates a "presumption" of nondiscrimination. This is an overstatement. The "common actor" doctrine "says it is reasonable to assume that if a person was unbiased at Time A (when he decided to hire the plaintiff), he was also unbiased at Time B (when he fired the plaintiff)." *Perez v. Thorntons, Inc.*, 731 F.3d 699, 710 (7th Cir. 2013). But this doctrine "is not a

is more, Suhoza testified that, to her recollection, the company always had terminated any employee who was caught being dishonest. *See* Suhoza Dep. at 33:13–34:2. This testimony corroborates Accurate's claim that dishonesty is a "drop-dead issue for the company." Waxman Dep. at 27:4–6. And to the extent that D'Amore was an exception to that policy, there is nothing in the record to suggest that she was treated differently because of her age. In light of the above, no reasonable jury could find that Accurate's stated reason for terminating DeSuno was a lie to conceal discrimination on the basis of age.

## IV.    Conclusion

For the reasons stated above, Accurate's motion for summary judgment is granted, and judgment will be entered in its favor. This case is terminated.

**IT IS SO ORDERED.**                    ENTERED: 3/28/22

_____

**John Z. Lee**
**United States District Judge**

---

conclusive presumption and . . . should be considered by the ultimate trier of fact rather than on summary judgment or the pleadings." *McKinney v. Off. of Sheriff of Whitley Cnty.*, 866 F.3d 803, 814 (7th Cir. 2017).